## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**EDWARD GARCIA**, on behalf of himself and all others similarly situated,

           Plaintiff,

  v.

**CONSERVICE, LLC,**

           **Defendant.**

**Case No. 8:23-cv-1869**

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff, Edward Garcia ("Plaintiff"), on behalf of himself and all others similarly situated, alleges the following based upon personal knowledge as to himself, upon information and belief, and the investigation of his counsel as to all other matters, and bring this class action against Defendant, Conservice, LLC ("Conservice" or Defendant"), as follows:

### I.     Nature of the Action

1.    This class action is filed on behalf of Plaintiff and a class of all others similarly situated against Defendant, a Utah consumer debt collection corporation, that illegally engages in debt collection activity in Florida.

2.    Defendant systematically sends standard form consumer debt collection letters and collects money from Florida consumers without registering

with the State of Florida to collect consumer debts as required by § 559.553 of the Florida Consumer Collection Practice Act ("FCCPA").

3.     On March 30, 2010, the Eleventh Circuit unequivocally pronounced that the failure to register oneself in the State of Florida as a "Consumer Collection Agency" constitutes a valid basis for an alleged violation of the Fair Debt Collection Practices Act ("FDCPA"). *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (11th Cir. March 30, 2010) ("We therefore hold that a violation for the FCCPA for failure to register may, in fact, support a federal cause of action under Section 1692e(5) of the FDCPA for threatening to take an action it could not legally take.")

4.     Conservice's actions are both illegal and unconscionable under the FCCPA and FDCPA. It is a criminal misdemeanor in Florida for "any person not exempt from registering to engage in collecting consumer debts in this state without first registering.")  FCCPA § 559.785.

5.     Plaintiff seeks actual and statutory damages on behalf of Florida consumers under the FDCPA and FCCPA for Conservice's routine and regular business practice of engaging in illegal unlicensed debt collection activity in Florida.

## II.     Jurisdiction and Venue

6.     The Court has subject matter jurisdiction over the Plaintiff's claims pursuant to 28 U.S.C. § 1331 as a result of the federal questions surrounding the Fair

Debt Collection Practices Act at 15 U.S.C. § 1692, and pursuant to 28 U.S.C. §1337, this Court has supplemental jurisdiction over the related state law claims.

7.     This Court has personal jurisdiction over Conservice because it conducts business throughout the State of Florida.

8.     Venue is appropriate under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in this District.

### III.    The Parties

9.     Plaintiff, Edward Garcia, was and is an individual resident and citizen of Florida, at all times relevant to this action.

10.     Defendant, Conservice, LLC, is a Utah limited liability company with its principal place of business in Utah.

### IV.    Factual Allegations

11.     Plaintiff's alleged debt that is the subject of Defendant's dunning letter derives from his tenancy at a residential apartment complex in Bradenton.  The alleged debt of utilities and service fees are a "consumer debt" pursuant to the FDCPA and FCCPA because it is a financial obligation Plaintiff incurred primarily for personal, family, or household purposes, specifically for his apartment. 15 U.S.C. §1692a(5); Fla. Stat. §559.55(6).

12.    During the Class Period, Conservice never registered with the State of Florida to collect consumer debts as mandated by § 559.553 of the Florida Consumer Collection Practices Act ("FCCPA").

13.    Plaintiff is a "consumer" within the meaning of the FDCPA and FCCPA. 15 U.S.C. 1692a(3); Fla. Stat. §559.55(8).

14.    Conservice is a debt collector within the meaning of the FDCPA and FCCPA. 15 U.S.C. 1692a(6); Fla. Stat. §559.55(7).

15.    Specifically, Conservice acts as a debt collector for residential landlords in Florida, and contracts to directly and indirectly assist landlords in collecting from tenants for various charges including utility charges such as water, sewer, and trash.  Conservice is not a landlord and is the not the entity to which the funds are owed.  Conservice is a third-party debt collector.

16.    At the heart of Conservice's debt collection practice is to take a landlord's utility bills from various utility providers and to divide these amounts among the tenants, add amounts on top for its service and potentially a profit for the landlord and then collect those amounts from the tenants. Thus, the entire purpose of Conservice's business is to charge and collect from tenants like Plaintiff for payment of utility charges allegedly owed to the landlords.

17.    Conservice solicits debt collection business from landlords in Florida. Although Conservice was collecting debt on behalf of the landlords with lease

agreements with Plaintiff and Class Members, the Collection Letters sent by Conservice indicated that the Collection Letters were from Conservice. Conservice employed numerous persons to market and sell to landlords its utility debt collection business model, which Conservice used to send the Collection Letters at issue to Plaintiff and to Class Members.

18.    Conservice's advertising confirms its regular business as a debt collector. For example, Conservice's website advertises that when Greystar (a nationwide property management company) uses Conservice's debt collection services:

> When Conservice analyzes a property, they're looking for all the little things that they can do for us. They find better rates at utilities companies. They catch mistakes made by utility companies. **<u>They improve recoveries when we're billing residents</u>**. Overall, it makes a tremendous difference to our bottom line.
>
> - Vicki Parrish, SR. Director, Advance Solutions at Greystar[1]
> (*emphasis added*)

19.    Starting in or around August 2022, despite knowledge that it is not a Florida registered consumer debt collector, Conservice began sending Plaintiff monthly standard form collection letters ("Collection Letter") in an attempt to collect consumer debt (utility charges and other fees from Plaintiff's apartment residence).

---

[1] https://www.conservice.com/solutions/expense-recovery/

**Exhibit A** (Conservice's May 9, 2023 standard form collection letter sent to Plaintiff).

20.    Exhibit "A" appears to be a standard form letter, generated by a computer.

21.    Each monthly Collection Letter Plaintiff has received from Conservice is the same standard form letter.

22.    More specifically, the Collection Letters demand that Plaintiff pay amounts denominated as "utility charges," including "sewer," "trash," "water," and a "Service Fee." Each of Conservice's Collection Letters demanded payment of these charges by a "due date." The Collection Letters characterized themselves as "bill[s]."

23.    Conservice emailed the Collection Letters to Plaintiff and the Class. The emails from Conservice included a link to (a) the Collection Letter, and (b) "Pay Bill,", which is an online payment portal.   This link to Bill Pay is evidence Conservice clearly contemplated collecting payment from Florida residents through the use of its Collection Letter.  Exhibit. A.

24.    The Collection Letter Conservice sent to Plaintiff and others similarly situated were "communications" as that term is defined by 15 U.S.C. § 1692a(2), since they were mediums used to directly convey information on a consumer debt.

25.    Moreover, the standard form Collection Letter sent to Plaintiff constitutes an effort to collect a consumer debt and contains a payment amount and instructions on how to make payment. For example, the Collection Letter (Exhibit A) represents that Plaintiff is to pay $81.31 by the Due Date of July 1, 2023, and even includes payment instructions.

26.    Additionally, Conservice's Collection Letter includes a $7.25 "Service Fee." Exhibit A. The Service Fee gives an explanatory statement that "Conservice is a service provider contracted to prepare monthly statements and provide conservation resources." Exhibit A.

27.    Conservice charges a Service Fee for its unregistered and illegal collection services fee and receives a benefit in the form of payment for its illegal debt collection services.

28.    The Service Fees Conservice charged to Plaintiff and Class Members were not based upon the amount of any utility or other service consumed or used at their residences, rather, the Service Fees were fees imposed on Plaintiff and Class Members to pay Conservice for its unregistered debt collection activity on behalf of its landlord customers.

29.    Conservice is not authorized to assess, charge, and/or collect any service fees directly from Plaintiff and Class Members related to debt collection until after Conservice registers as a debt collector in Florida. Put another way, Conservice

is not entitled to collect the Service Fee it charged Plaintiff and Class Members for undertaking an unlawful course of business in Florida.

30.    Florida's prohibition against persons doing business as a debt collection agency without registering is designed to protect the interests of Florida consumer debtors like Plaintiff and the Class.

31.    Conservice's illegal debt collection letter caused Plaintiff to pay the debt allegedly owed because receiving a debt collection letter from what appeared to be a legitimate debt collector made him believe he had to pay the amount claimed to be owed in order to protect his credit and avoid possible eviction.

32.    Conservice's Collection Letter was false and deceptive, as Plaintiff was not informed in the Collection Letter that Conservice was not licensed in Florida, and was therefore not legally authorizes or permitted to collect debts from him on behalf of third parties.  However, Conservice failed to disclose in its Collection Letter the material fact that it was not lawfully permitted to collect any money from Plaintiff, which resulted in the Plaintiff paying the debt, which included the illegal Service Fee. Thus, Plaintiff suffered actual damages from making payments on the debt, which included the Defendant's $7.25 Service Fee.

33.    Through Conservice's unregistered collection letters, Plaintiff and Class Members suffered actual harm and damage by paying monies to an unregistered debt collector in Florida, which is a violation of a substantive legal right

(that is, a private, state congressionally-created right), in FCCPA Section 559.72 (10) which states that, "no person shall: use a communication that simulates in any manner legal or judicial process or that gives the appearance of being authorized, issued, or approved by a government agency, or attorney at law, when it is not." The Florida state legislature intended to decrease the risk of consumers paying money to unregistered debt collectors by making it a violation of the FCCPA for debt collectors to send a communication (letter) to consumers that gives the appearance of being authorized as a licensed debt collector.

34.    Conservice never registered with the State of Florida to collect consumer debts as mandated by § 559.553 of the Florida Consumer Collection Practices Act ("FCCPA").

35.    Once Plaintiff learned that Conservice was not authorized to collect debt in Florida he became further stressed and concerned as he did not know what would happen if he did not pay the debt, so he paid the debt because the debt could negatively impact his credit or potentially lead to a legal action against him.

36.    Upon information and belief, Conservice routinely sends standardized collection letters, in substantially the same format as Exhibit A, to Florida consumers in an attempt to collect payments for on utilities and for its monthly Service Fees. However, at no point in time has Conservice possessed the legal authority to send any debt collection letters, charge a Service Fee, or collect money from Plaintiff and

putative Florida Class Members because they never registered with the State of Florida to collect consumer debts in violation of § 559.553 of the Florida Consumer Collection Practice Act ("FCCPA").

37.    Conservice's unregistered collection activities against Plaintiff and putative Florida Class Members constitutes a criminal misdemeanor pursuant to the FCCPA § 559.785.

38.    Conservice's conduct as described herein should be declared unlawful by this Court.

39.    Conservice should be enjoined from sending Collection Letters requesting payments for debt to Florida consumers in the manner described herein because they are not registered in accordance with Florida law.

40.    Conservice should be forced to disgorge all ill-gotten gains collected from consumers as a result of its unlawful conduct, as well as ordered to pay actual and statutory damages.

## V.    Class Action Allegations

41.    Plaintiff seeks to bring this case as a class action, pursuant to Rule 23 of the Federal Rules of Procedure. The proposed class is defined as follows:

> **COLLECTION LETTER CLASS:** All persons in the State of Florida who received a Collection Letter, which included a Service Fee, from Conservice in substantially the same form as Exhibit A and paid the Service Fee.

42.    The Class period for each claim in this Complaint is equivalent to the applicable statutes of limitations, FDCPA (1 year), FCCPA (2 years) and Unjust Enrichment (4 years).

43.    Expressly excluded from the Class(es) are: any Judge or Magistrate presiding over this action and members of their immediate families; and all persons who properly execute and file a timely request for exclusion from the Class.

44.    Plaintiff reserves the right to amend the Class(es) definitions at the Class Certification stage of the litigation if further investigation and discovery indicates that the Class definitions should be narrowed, expanded, or otherwise modified.

### **Rule 23(a) Criteria**

45.    **Numerosity.** The exact number of Class Members is unknown as such information is in the exclusive control of Conservice. However, due to the nature of the trade and commerce involved, Plaintiff believes the Class consists of thousands of consumers, geographically dispersed throughout Florida, making joinder of all Class Members impracticable. Class Members are ascertainable from a review of Conservice's business records of the collection letters.

46.    **Commonality.** There are questions of law and fact common to the Class which predominate over any questions affecting only individual members. The principal issue raised by this claim is whether Conservice violated the FDCPA and

FCCPA by sending debt collection letters in Florida without ever registering with the State of Florida as a consumer debt collector as required by the FCCPA.

47.    The only individual question concerns the identification of the person whose consumer rights have been violated by Conservice's practices, which are the subject of this Complaint. This can be determined by a ministerial examination of Conservice's records.

48.    **Typicality.** The claims are typical of those of the Class Members as Conservice was not authorized to collect any debts from any Class Member. All Class members are entitled to relief by virtue of Conservice's violation of the FDCPA, FCCPA and the common law of Unjust Enrichment.

49.    **Adequacy of Representation.** The representative Plaintiff will fairly and adequately assert and protect the interests of the Class.  First, Plaintiff has hired attorneys who are experienced in prosecuting class action claims within this state and across the United States, and who will adequately represent the interests of the Class.  Second, Plaintiff has no conflict of interest that will interfere with the maintenance of this class action as his claims are the same as the Class Members he seeks to represent.

## Rule 23 (b) Criteria

50.    Certification of a class under Rule 23(b)(3) is appropriate, in that a class action is superior to other available methods for the fair and efficient adjudication of

this controversy. The interests of the Class Members in individually controlling the prosecution and defense of separate actions is minimal, in that the Class Members are unlikely to be aware that their rights were violated and in that individual actions are uneconomical. Difficulties likely to be encountered in managing this class action are substantially less than those that are involved in other types of cases routinely certified as class actions.

51.    Although the Class is numerous enough to meet the numerosity requirement, proposed classes do not create manageability problems because the claims turn on common legal determinations.  There are no unusual legal or factual issues that would create manageability problems as the issues turn on interpretation of Conservice's standard form Collection Letters.

52.    Prosecution of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications against Defendant when confronted with incompatible standards of conduct.

53.    Despite the costly nature of the fees charged to Plaintiff and Class Members, the claims of the individual Class Members are, nevertheless, small in relation to the expenses of individual litigation, making a class action the only procedural method of redress in which Class Members can, as a practical matter, recover their damages and stop the unregistered debt collection practices.

## CAUSES OF ACTION

### <u>COUNT I</u>
**Violation of the Fair Debt Collection Practices Act 15 U.S.C. § 1692 et seq. ("FDCPA")**

54.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1-53 above, as if set forth herein in full.

55.     At all times material herein, Plaintiff and others similarly situated were "consumers" as defined by 15 U.S.C. § 1692a(3) because they are natural persons allegedly obligated to pay a consumer debt.

56.     At all material times herein, Plaintiff's debt and the debt of others similarly situated were consumer "debts" as defined by 15 U.S.C. 1692a(5), since they were obligations of a consumer to pay money arising out of a transaction in which the money and property which were the subject of the transaction were primarily for personal, family, or household purposes.  Specifically, utility bills for personal residences are consumer debts subject to the FDCPA.

57.     At all times material herein, Conservice was acting as a "debt collector," as that term is defined by 15 U.S.C. § 1692a (6).

58.     The Collection Letter Conservice sent to Plaintiff and others similarly situated were "communications" as that term is defined by 15 U.S.C. § 1692a(2), since they were mediums used to directly convey information on a debt.

59.    Conservice's failure to register in Florida as a consumer debt collector as mandated by Florida Statutes § 559.553, while actively and regularly engaging in debt collection in the State of Florida, violates 15 U.S.C. § 1692e and e(10) because attempting to collect Plaintiff's and Class Members' debt while not licensed as required by Florida law is a false, deceptive, and misleading practice.

60.    Conservice's failure to register in Florida as a consumer debt collector as mandated by Florida Statutes § 559.553, while actively and regularly engaging in debt collection in the State of Florida, violated 15 U.S.C. § 1692e(2)(A) because attempting to collect Plaintiff and Class Members' debt and/or actually collecting a debt while not licensed as required by Florida law constitutes a false representation of the character and legal status of the debt.

61.    Conservice's failure to register in Florida as a consumer debt collector as mandated by Florida Statutes § 559.553, while actively and regularly engaging in debt collection in the State of Florida, violated 15 U.S.C. § 1692e(5) because attempting to collect Plaintiff and Class Members' debt and/or actually collecting a debt while not licensed as required by Florida law and claiming that it may collect money from a consumer is a threat to take action that cannot legally be taken.

62.    At all material times herein, Conservice knew or should have known that the debt it was attempting to and collected from the Plaintiff and the Class

Members was from Florida residents where Conservice is not an authorized registered debt collector, which is required by Florida law.

63.     In or around May 2023, despite knowledge that Conservice is not a Florida registered consumer debt collector, Conservice sent a standard form collection letter to Plaintiff in an attempt to collect a Florida consumer debt. **Exhibit A.**

64.     For purposes of the claims brought in this action, the applicable standard under the FDCPA is "the least sophisticated" consumer test.

65.     Plaintiff and Class Members suffered actual harm and damages by making payments on the Collection Letter, which included a Service Fee for Conservice's illegal collection activity. Conservice cannot charge a Service Fee directly to Plaintiff and Class Members for debt collection when it is not registered and not authorized to collect debts in Florida.

66.     The standard form Collection Letter sent to Plaintiff and Class Members constitutes an effort to collect a consumer debt and contains a payment amount and payment instructions. For example, Plaintiff's Collection Letter represents that Plaintiff is to pay $87.64 ("Amount Due") and includes payment instructions, and the email sent with the Collection Letter contains a link to make payment, which evidence Conservice clearly contemplated payment from Plaintiff. Ex. A.

67.    As a direct and proximate result of Conservice's FDCPA violations, Plaintiff and others similarly situated have been harmed by paying amounts allegedly owed to an unauthorized debt collector, including a Service Fee.  Plaintiff and others similarly situated are entitled to actual damages, statutory damages under 15 U.S.C. § 1692k(a)(2)(B) and attorney's fees and the costs of this action pursuant to 15 U.S.C. § 1692k(a)(3).

68.    Conservice's Collection Letter attempting to collect money from Plaintiff was false and deceptive, as he was not informed in the Collection Letter that Conservice was not registered to collect debts in Florida, and was not legally permitted to attempt to collect a debt from him. Conservice failed to disclose to Plaintiff the material fact that it was not lawfully permitted to collect from him, which resulted in Plaintiff paying the amount sought in the Collection Letter, which includes an illegal Service Fee.  Through Conservice's Collection Letters it sent as an unregistered debt collector in Florida, Plaintiff and Class Members suffered an increased risk of paying monies to an unregistered debt collector in Florida, which is a violation of a substantive legal right (that is, a private, state congressionally-created right), in FCCPA Section 559.72 (10) which states that, "no person shall: use a communication that simulates in any manner legal or judicial process or that gives the appearance of being authorized, issued, or approved by a government agency, or attorney at law, when it is not." The Florida state legislature intended to

decrease the risk of consumers paying money to unregistered debt collectors by making it a violation of the FCCPA for debt collectors to send a communication (letter) to consumers that gives the false appearance of being an authorized debt collector.

69.    Plaintiff, on behalf of himself and others similarly situated, retained the undersigned attorneys for the purposes of pursuing this matter against Conservice and is obligated to pay his attorneys a reasonable fee for their services.

70.    Because Conservice's actions were intentional, willful and/or with disregard for Plaintiff's rights, Plaintiff reserves the right to seek punitive damages upon the showing on the records of evidence sufficient to form the basis of a claim for punitive damages.

### COUNT II
### Violation of the Florida Consumer Collection Practices Act,
### Fla. Stat. § 559.55 et seq. ("FCCPA")

71.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 53, as if set forth fully herein.

72.    At all times material herein, Plaintiff and Class Members were "debtors" and "consumers" as defined by Fla. Stat. § 559.55(8).

73.    At all times material herein, Plaintiff's alleged debt and the debt of the Class Members were "debts" or "consumer debts" as defined by Fla. Stat. § 559.55(6).

74.     At all times material herein, Conservice was a "person" as referred to under Fla. Stat. § 559.72.

75.     For purposes of the claims brought in this action, the applicable standard is the "least sophisticated" consumer test.

76.     Fla. Stat. § 559.553(1) declares, "a person may not engage in business in this state as a consumer collection agency or continue to do business in this state as a consumer collection agency without first registering in accordance with this part, and thereafter maintaining a valid registration."

77.     FCCPA section § 559.72 (10) declares:

> In collecting consumer debts, no person shall: Use a communication that simulates in any manner legal or judicial process or that gives the appearance of being authorized, issued, or approved by a government agency, or attorney at law, when it is not.

78.     During the relevant Class period, Conservice regularly and systematically charged and collected consumer debts from Plaintiff and Class Members in the State of Florida without registering as a consumer debt collector as required by Fla. Stat. § 559.553(1) and simulated and gave the appearance of being authorized to collect consumer debt in the State of Florida in violation of Fla. Stat. § 559.72(10).

79.     Fla. Stat. §559.72 provides in pertinent part that it is unlawful to:

> Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal

right when such person knows that the right does not exist. Fla. Stat. § 559.72(9).

80.    Conservice knowingly violated Fla. Stat. § 559.72(9) by claiming the right to charge for and collect a "Service Fee" when it knew it was not lawfully licensed to conduct collection activities in Florida and by charging, attempting to collect and collecting "Service Fees" from the Plaintiff and the Class Members when it did not have that legal right to do so.

81.    As a direct and proximate result of Conservice's FCCPA violations, Plaintiff and the Class have been harmed. Plaintiff and the Class are entitled to actual damages, statutory damages, attorney's fees and costs pursuant to Fla. Stat. § 559.77(2).

82.    Plaintiff relied on the representations in the Collection Letter that Conservice could collect the debt, and because of his concerns caused by the receipt of the Collection Letter, Plaintiff paid the amount due in the Collection Letter.

83.    Conservice's Collection Letter attempting to collect money from Plaintiff was illegal, false and deceptive, as he was not informed in the Collection Letter that Conservice was not licensed in Florida, and was therefore not legally permitted to attempt to collect debts from him. These false statements resulted in Plaintiff making payments on the amount allegedly owed in the Collection Letter.

84.    The Florida State Legislature intended to decrease the risk of consumers paying money to unregistered debt collectors by making it a violation of

the FCCPA for debt collectors to send a communication (letter) to consumers that gives the appearance of being authorized as a licensed debt collector.

85.     Conservice never registered with the State of Florida to collect consumer debts as mandated by Florida Statute § 559.553.  Therefore, it could not legally charge and collect a "Service Fee" for its unlawful debt collection activities.

86.     Plaintiff and the Class suffered harm and actual damages from being charged and paying Service Fees to Conservice.

87.     Plaintiff and the Class seek actual damages, statutory damages under the FCCPA, and attorney's fees and court costs under FCCPA Florida Statutes § 559.77(2).

**COUNT III**
**UNJUST ENRICHMENT**

88.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1-53 above, as if set forth herein in full.

89.     Plaintiff and Class Members conferred a benefit upon Conservice by paying amounts billed to them in the bills sent by Conservice, amounts from which Conservice took a portion of the payment for itself.

90.     Conservice knew of and accepted the benefit conferred upon it by the payments made by Plaintiff and members of the Class. Conservice affirmatively demanded in its bills that Plaintiff and Class Members pay amounts including, but

not limited to Service Fees, for Conservice's unregistered billing and collection activity.

91.     It would be unjust and inequitable for Conservice to retain the amounts that it has received and retained in connection with the collection activities directed at Plaintiff and members of the Class, as Conservice was not legally allowed to collect and retain the amounts it retained as a result of its unlawful activity described in the Compliant.

92.     Plaintiff and the Class suffered harm and actual damages from being charged and paying Service Fees, because Conservice cannot legally charge and collect Service Fees in Florida because it is not a registered debt collector.  The damages to Plaintiff and the Class Members are directly related to and caused by Conservice's unauthorized collection actions within this state.

**Prayer for Relief**

WHEREFORE, Plaintiff prays that this case be certified and maintained as a class action and for judgment to be entered against Conservice as follows:

A.     Enter an order certifying the proposed Class, designating Plaintiff as the Class representatives, and designating the undersigned as Class counsel;

B.     Adjudging that Conservice violated the FDCPA and FCCPA sections enumerated above, and awarding Plaintiff and Class Members actual

and statutory damages pursuant to 15 U.S.C. § 1692k and Fla. Stat. §559.77(2);

C.    Declaring that Conservice unlawfully attempted to and actually collected debts in Florida while not being registered as a consumer debt collector as required by Fla Stat. § 559.553;

D.    Enjoining Conservice from sending Collection Letters similar to those attached as Exhibit A in the manner described in this lawsuit;

E.    Ordering disgorgement of all ill-gotten sums collected while unregistered;

F.    Awarding Plaintiff, and all those similarly situated, reasonable attorney's fees and costs incurred in this action pursuant to 15 U.S.C. § 1692k(a)(3) and Fla. Stat. §559.77(2);

G.    Awarding Plaintiff, and all those similarly situated, any pre-judgment and post-judgment interest as may be allowed under the law; and

H.    Awarding such other and further relief as the Court may deem just and proper.

## **<u>Jury Demand</u>**

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 18ᵗʰ day of August, 2023.

**VARNELL & WARWICK, P.A.**

/s/ Brian Warwick
Brian W. Warwick; FBN 0605573
Janet R. Varnell; FBN 0071072
Pamela G. Levinson; FBN: 0538345
Jeffrey Newsome; FBN 1018667
400 N Ashley Drive, Suite 1900
Tampa, FL 33602
Telephone: (352) 753-8600
Facsimile: (352) 504-3301
*bwarwick@vandwlaw.com*
*jvarnell@vandwlaw.com*
plevinson@vandwlaw.com
*jnewsome@vandwlaw.com*


**LAW OFFICES OF GLENN S BANNER**

/s/ Glenn S. Banner
Glenn S. Banner; FBN: 0620254
4118 Tradewinds Dr.
Jacksonville, FL 32250
Telephone: 904-240-44401
gbanner@gbannerlaw.com

***Attorneys for Plaintiff***